**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | | |
|---|---|---|
| | ) | Case No. **1:22-CV-2297** |
| | ) | |
| RAISSA DJUISSI KENGNE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| GEORGIA POWER COMPANY | ) | |
| C/O Kristi Dow | ) | |
| 241 Ralph McGill Blvd., BIN 10180 | ) | |
| Atlanta, GA, 30308, USA | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT, INJUNCTION FOR RELIEF,
AND DECLARATORY JUDGMENT**

TO THE HONORABLE JUDGE TO SAID COURT:

PLAINTIFF, RAISSA DJUISSI KENGNE ("Plaintiff" or "Borrower") files this Original

Complaint, Injunction for Relief, and Declaratory Judgement against Georgia Power Company

("Defendant", "Georgia Power" or the "Utility"), and show that Plaintiff is entitled to an injunction

and a declaration judgment by this Court that 1) Georgia Power unlawfully, illegally, and/or

wrongfully disconnected service at Plaintiff's home and acted against the Utility Regulations, 2)

Georgia Power's act of closing Plaintiff's account is against laws and regulations governing the

Utility industry in the State of Georgia, 3) Plaintiff is allowed to retain her account number 93437-

55009 and not be assigned a new one, 4) Georgia Power must restore power at Plaintiff's home immediately, 5) Georgia Power allows Plaintiff to make payment for the past due amount on her account using the same account number 93437-55009 that Plaintiff has utilized for more than ten (10) years, 6) Georgia Power provides Plaintiff with information related to meter reading data used to calculate the bill due to a high discrepancy in the kilowatts usage between the months of January and February 2022, 7) Georgia Power provides Plaintiff with information showing the last time the meters were tested. Georgia Power should restore the power at Plaintiff's home immediately because Georgia Power violated the following regulations, Rule 515-3-2-.02 Limitations on Disconnection, Rule 515-3-2-.04 Seasonal Restrictions, Rule 515-3-2-.06 Right of the Customer; thereby, depriving Plaintiff of public and essential services. Georgia Power is also in violation of their own "Rules and Regulations for Electric Service". In support of this instrument, Plaintiff, would respectfully show as described herein.

## PRELIMINARY STATEMENT

1.    Courts and state legislatures have long recognized that access to public utility service is a basic necessity in modern society. Public utilities are those utilities like electricity, natural gas, water and local phone service that serve the general public. Public utilities have a "duty to serve." This means that utilities must provide service to any member of the public living within the utility's service area who has applied for service and is willing to pay for the service and comply with the utility's rules and regulations. Georgia Power is one such public utility company. The utility's duty to serve is not absolute. A utility may deny service for good cause (e.g., nonpayment). However, there are exceptions to disconnection covered in laws and regulations governing the utility industry. Although Plaintiff was late in making a payment on her utility bill, Georgia Power did not have a good reason to stop the electrical service at Plaintiff's home.

2.        This case concerns the unlawful disconnection of service at Plaintiff's home by Georgia Power. Georgia Power is regulated by the Public Service Commission and subject to the laws of the state of Georgia. The Public Service Commission requires that Georgia Power provides customers with a disconnection notice before service is disconnected and the option to appeal any shut-off decision. Plaintiff did not receive a disconnection notice and was not given the option to appeal the disconnection notice.

3.        Before disconnecting the electricity, Georgia Power must send a notice at least five (5) days before the date of disconnection. The disconnect notice must look different from the past bill for service and state:

> (1)        The earliest date for the proposed disconnection,
>
> (2)        The amount due and the reason for the proposed disconnection,
>
> (3)        A telephone number customers may call for information about the proposed disconnection,
>
> (4)        How to prevent disconnection of service,
>
> (5)        Information known to the utility that may assist the consumer in paying the bill.

Plaintiff did not receive a disconnection notice. Furthermore, Georgia Power did not provide Plaintiff with information related to the earliest date for the proposed disconnection, the amount due and the reason for the proposed disconnection, a telephone number customers may call for information about the proposed disconnection, how to prevent the disconnection of service, and information known to Georgia Power that may have assisted the customer in paying the bill.

4.        At least two (2) days before the proposed disconnection, Georgia Power must try to make personal contact by:

    (1)     telephone,

    (2)     certified mail, or

    (3)     other methods designed to notify customers of the disconnection.

Plaintiff was not contacted by telephone, certified mail, or any other methods designed to notify her of the disconnection.

5.     The Plaintiff's home that is the subject matter of this lawsuit is located at 1280 West Peachtree ST NW Unit 2109, Atlanta, GA 30309. Plaintiff lives in a condominium name 1280 West Condominium. Georgia Power provides electricity service to the 1280 West Condominium, including the Plaintiff's home.

6.     Plaintiff reported a violation of SEC regulations, PCAOB Standards, the Antitrust law, and a circumvention of the law prohibiting employers from asking about an applicant's pay history in the state of Georgia. The misconduct happened at BDO USA, LLP. Plaintiff was retaliated against. Her home was broken into, her life and her family's lives were threatened, and her computers and phones were hacked. In addition, Plaintiff personal information was stolen, including her Social Security Number "SSN" and protected heath (HIPAA) related information. These events caused Plaintiff to be unable to address the issues with Georgia Power sooner. Circumstances mentioned herein are documented in case number 2022CV365268 that was filed in the Superior Court of the State of Georgia.

7.     In addition, Plaintiff's access to her mail from Georgia Power was withheld due to a conflict with the 1280 West Management and the 1280 West Board of Directors who criminally withheld Plaintiff mail from her. This issue is part of a lawsuit filed in the Superior Court of Georgia under case 2022CV365268. Therefore, Plaintiff was not able to file a complaint with the Public Service Commission ("PSC") or a lawsuit sooner.

8.     Plaintiff received a bill from Georgia Power for the month of January 2022 in the amount of $96.07 and for the month of February 2022 in the amount of $78.60. The total due as of February 11, 2022 amounted to $206.67 and included return item fee. Plaintiff did not receive a Georgia Power bill for the month of March 2022 because the electricity was disconnected on March 03rd, 2022.

9.     The total amount due to Georgia Power at the time of the disconnection of the service was $206.67. It is also the amount stated on the last bill dated February 11th, 2022 that Plaintiff received.

10.     Plaintiff has contacted Georgia Power on June 07th, 2022 to a) request that electricity be restored to her home, b) to pay the past due amount on her existing account number 93437-55009, while keeping the same account number and not being assigned a new account number, c) to dispute the billing amount on her latest past due bills for the months of January 2022 and February 2002, which according to Georgia Power are the reasons the electricity was disconnected, and d) to request information about meter reading data that were utilized in order to calculate Plaintiff's bill for the months of January and February 2022.

11.     Plaintiff wants the electricity to be restored at her home. In addition, Plaintiff wants to dispute the amount on her January 2022 and February 2022 bill payment and keep her account number 93437-55009. Plaintiff also wants to make payments for the undisputed part of her electrical bill for the months of January 2022 and February 2022. Plaintiff has also filed a formal complaint with the Public Service Commission on June 6th, 2022. The Public Service Commission's complaint reference number is 100-205-661.

## I.

## PARTIES AND SERVICE OF PROCESS

**Plaintiff Raissa Djuissi Kengne**

12.      Plaintiff Raissa Djuissi Kengne is a Georgia resident residing at 1280 West Peachtree ST NW Unit 2109, Atlanta, GA 30309. Plaintiff Raissa Djuissi Kengne's mailing address is 570 Piedmont Ave NE Unit 55166, Atlanta, GA 30308.

13.      Plaintiff Raissa Djuissi Kengne had electricity disconnected at her home without notice or option to remedy the default or dispute the charge.

14.      Plaintiff Raissa Djuissi Kengne is a Certified Information Systems Auditor ("CISA"). The CISA certification attests of Plaintiff's expertise and her ability to apply a risk-based approach to planning, executing, and reporting on audit engagements. The CISA certification proves the Plaintiff's competence in incorporating privacy by design into technology platforms, products and processes, communicating with legal professionals, and keeping the organization compliant efficiently and cost effectively. The CISA proves the Plaintiff has the technical skills and knowledge it takes to assess, build, and implement a comprehensive privacy solution.

15.      Plaintiff Raissa Djuissi Kengne is a Certified Information Security Manager ("CISM"). The CISM certification attests of the Plaintiff's technical expertise and experience in IS/IT security and control. The CISM certification proves the Plaintiffs' competence in alignment between the organization's information security program and its broader goals and objectives. The CISM certification also attest of Plaintiff's commitment to compliance, security and integrity.

16.      Plaintiff Raissa Djuissi Kengne is a Certified in Risk and Information Systems Control ("CRISC"). The CRISC certification proves the Plaintiff's skills and knowledge in using governance best practices and continuous risk monitoring and reporting.

17.     Plaintiff Raissa Djuissi Kengne is a Certified Internal Auditor ("CIA"). The CIA certification proves Plaintiff's expertise in the design, implementation, testing, and assessment of controls as well as expertise in corporate governance, risk management, and internal controls. The CIA certification also proves the Plaintiff's expertise in the areas of governmental regulations and reporting requirements.

18.     Plaintiff Raissa Djuissi Kengne is a Certified Fraud Examiner ("CFE"). The CFE credentials proves Plaintiff's expertise as a trained professional who possesses a unique set of diverse skills in preventing, detecting and investigating fraud. The CFE credential validates the plaintiff's skills such as knowledge of complex financial transactions, understanding of investigative techniques and legal issues, the ability to resolve allegations of fraud, and the design of effective anti-fraud programs.

19.     Plaintiff Raissa Djuissi Kengne is a Lean Six Sigma Green Belt holder. The Lean Six Sigma Green Belt proves the Plaintiff possesses a thorough understanding of enhanced problem-solving skills, with an emphasis on the DMAIC (Define, Measure, Analyze, Improve and Control) model. A Lean Six Sigma Green Belt certification also denotes the Plaintiff is well-versed in the advanced elements of Lean Six Sigma Methodology, and leads improvement projects at a high level of proficiency.

20.     Plaintiff Raissa Djuissi Kengne reported a violation of SEC regulations, PCAOB Standards, the Antitrust law, and a circumvention of the law prohibiting employers from asking about an applicant's pay history in the state of Georgia. The misconduct happened at BDO USA, LLP where Plaintiff worked. Plaintiff was retaliated against. Plaintiff's home was broken into. Plaintiff's life and her family's lives were threatened. Plaintiff's computers and phones were hacked. Plaintiff had to travel to make sure her family was alright and fell behind on her mortgage.

21.     Plaintiff's Raissa Djuissi Kengne wants to pay her past due mortgage amount and any reasonable fees associated with the initial foreclosure process, thereby, bringing the balance on her account current.

### Defendant Georgia Power

22.     Defendant Georgia Power is an electric utility headquartered in Atlanta, Georgia, United States. Georgia Power serves the state of Georgia. The address provided on Georgia Power's website (ww.georgiapower.com) is 241 Ralph McGill Blvd NE, Atlanta, GA 30308. Georgia Power's phone number is 1 (888) 660-5890.

23.     Georgia Power is the largest of the four electric utilities that are owned and operated by Southern Company. Georgia Power is an investor-owned, tax-paying public utility that serves more than 2.4 million customers in all but four of Georgia's 159 counties.

24.     Georgia Power is regulated by a Georgia state agency, the Public Service Commission ("PSC"). Georgia offers essential services to the public and is subject to some degree of governmental control in addition to being regulated by the PSC. Georgia Power is subject to the jurisdiction of this court.

25.     Defendant Georgia Power can be served with legal process through delivery of the Summons and Complaint, Injunction for Relief, and Declaratory Judgment in this action to its Registered Agent at the address listed below.

Defendant Name: Georgia Power

Defendant Registered Agent: Kristi Dow

Defendant AG South Farm Credit Address: 241 Ralph McGill Blvd., BIN 10180, Atlanta, GA, 30308, USA

Defendant County: Fulton County, Georgia

Defendant AG South Farm Credit Phone Number: 1 (888) 660-5890

26.     Service is requested at this time.


## II.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this case because the Plaintiff's

claims arise under the laws of the State of Georgia and the United States. It has jurisdiction over

the Plaintiff's state law and regulations claims because they are so closely related to the federal

claims as to form part of the same case or controversy. The Northern District of Georgia consists

of four (4) divisions as outlined and described in 28 U.S.C. § 90. The Atlanta Division comprises

the counties of Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton,

and Rockdale.

28.     Pursuant to 28 U.S. Code § 1391, a civil action may be brought in a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated. Georgia Power provides

electricity service to Plaintiff in Fulton County, Atlanta, GA 30309.

29.     Pursuant to 28 U.S. Code § 1391, for purposes of venue in a State, which has more

than one judicial district and in which a defendant that is a corporation is subject to personal

jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any

district in that State within which its contacts would be sufficient to subject it to personal

jurisdiction if that district were a separate State, and, if there is no such district, the corporation

shall be deemed to reside in the district within which it has the most significant contacts.

30.     Pursuant to 28 U.S. Code § 1343, Civil rights and elective franchise, the Northern District Court of the State of Georgia has authority:

(1)     To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2)     To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3)     To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4)     To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote;

(5)     To exercise such other powers, not contrary to the Constitution, as are or may be given to such courts by law.

31.     Venue is proper in this Court because all or a substantial part of the conduct and violations giving rise to the claims in the case occurred in the State of Georgia. See O.C.G.A § 14-2-510, O.C.G.A § 9-10-91, O.C.G.A § 9-10-93, O.C.G.A § 9-10-31, and O.C.G.A § 9-10-34.

32.     This Court has personal jurisdiction over Defendant Georgia Power because Defendant Georgia Power, through its agents committed the acts that are the subject matter of this lawsuit in the State of Georgia. See O.C.G.A § 14-2-510, O.C.G.A § 9-10-91, O.C.G.A § 9-10-93, O.C.G.A § 9-10-31, and O.C.G.A § 9-10-34.

33.     This Court has personal jurisdiction over Defendant Georgia Power because Defendant Georgia Power and its agents and employees, have ongoing and systematic contacts with the State of Georgia, maintains headquarter offices in the State of Georgia, and reside in the State of Georgia, and have committed the acts that are the subject matter of this lawsuit in the state of Georgia.

34.     Venue is proper in this Court because Defendant Georgia Power is headquartered and its principal place of business is located in Fulton County, Atlanta, Georgia.

35.     Venue is proper in this Court because Defendant Georgia Power's conducts substantial business in Fulton County, Atlanta, Georgia.

36.     Plaintiff Raissa Djuissi Kengne has standing to bring this Complaint in Court because she will be adversely affected by the actions of the Defendant and will be subject to undue harm if Defendant does not restore electricity at Plaintiff's under Plaintiff's account number 93437-55009. Plaintiff does not want a new number.

37.     Accordingly, venue is proper pursuant to 28 U.S.C. § 90, 28 U.S. Code § 1391, 28 U.S. Code § 1343, and Georgia Civil Practice and Corporations, Partnerships, And Associations Code § 15-6-8, O.C.G.A § 14-2-510, O.C.G.A § 9-10-91, O.C.G.A § 9-10-93, O.C.G.A § 9-10-31, O.C.G.A § 9-10-34.

### III.

### STATEMENT OF RELEVANT FACTS

**Notice of Termination Not Received**

38.     Defendant Georgia Power terminated service at Plaintiff's home on March 3rd, 2022.

39.     Plaintiff was not given notice prior to termination of service: (a) that the service will be terminated by a particular date, (b) the reason for the proposed shut-off, (c) the various rights that the consumer has to prevent termination, (d) the right and procedures for appeal. Sometimes written notice must be given more than once.

40.     Plaintiff has constitutional due process rights to notice and a hearing prior to the termination of utility service.

41.     Defendant Georgia Power failed to comply with these notice requirements and made the termination wrongful.

## Limitations Applicable to the Disconnection of Utility Service

42.     The State of Georgia's public utility regulations typically permit disconnection for non-payment, but often prohibit disconnections for small, insignificant amounts, or for balances that have been outstanding for less than a certain number of months.

43.     Georgia laws and the Public Service Commission rules also prohibit disconnections when there is a dispute over the bill.

44.     Georgia laws and the Public Service Commission rules also prohibit disconnections during certain period in the Winter and the Summer.

45.     A kilowatt hour (kWh) is a measure of how much energy is used per hour, whilst a kW is a measure of power. kW stands for kilowatt, a universal standard for measuring electricity. Therefore, one (1) kilowatt equals 1,000 watts. Georgia Power charges by how much electricity is used per kilowatt hour (kWh). The kWh is a unit of energy, the number of kilowatts that is use over time.

46.     Plaintiff Raissa Kengne is disputing the amount on the bill that she received based on her kWh usage. The total kWh used on Plaintiff's electricity bill for the month of November

2022 was 390 kWh. The total kWh used on Plaintiff's electricity bill for the month of December 2022 was 723 kWh. There is a difference of 85.34%. The usage on the bill increased by 85.34% or 333 between November 2022 and December 13, 2022.

47.     The total kWh used on Plaintiff's electricity bill for the month of January dated January 13rd, 2022 was 736 kWh. The total kWh used on Plaintiff's electricity bill for the month of February dated February 11th, 2022 was 538 kWh. There is a difference of 26.90%. The usage on the bill decreased by 26.90% or 333 between January 13rd, 2022 and February 11th, 2022.

48.     There may be adjustments in the readings. The meter is read once a month by a Meter Reading employee. Due to weekends, holidays, or the length of the month, the total days between each meter reading may vary; thus, it is possible for the monthly usage to increase or decrease from the previous billing period even though the average daily use may remain the same. The electricity bill is calculated based on what is used in a monthly billing cycle. As the meter is read from month to month, the difference in these readings accounts for consumption, and Plaintiff is billed accordingly. On occasion, Georgia Power may estimate the electric usage for a month's billing cycle due to specific circumstance. Georgia Power must provide the customer with information about estimated readings and any adjustments that are made to Plaintiff's account due to estimated readings. Plaintiff did not receive information related to a possible meter reading adjustment to explain the difference in the usage and the calculation of her electricity bill.

49.     Plaintiff is disputing her electricity bills due to the discrepancies in her electricity usage as reported by Georgia Power on her bill. Plaintiff submitted copies of her Georgia Power electricity as part of the Notice of Filing – Exhibit 1.

50.     Plaintiff's electricity bill was paid in full for the month of December 2022.

51.     Defendant Georgia Power stated that Plaintiff's bill was not paid for the months of January 2022 and February 2022.

52.      Plaintiff paid a deposit amount to Georgia Power when she first opened her account. The deposit amount was not applied to Plaintiff's electricity bill prior to the service disconnection or was not taken account into determining the number of days past due before disconnecting the electricity. Defendant Georgia Power has terminated service at Plaintiff's home before the required 45 days after the date of the bill, thereby violating laws and regulations related to service disconnection in the state of Georgia.

53.     Plaintiff's electricity was disconnected on March 3rd, 2022.

54.     The laws of the state of Georgia and the rules and regulations approved by the PSC prevent Georgia Power from disconnecting power during certain period in the year, commonly referred to as "Seasonal Hold".

55.      During the winter, "A utility shall not discontinue gas or electric service to a residential customer between **November 15th and __March 15th__** if the forecasted local temperature is below 32°F for a 24-hour period beginning at 8:00 a.m. on the date of the proposed disconnection. The consumer must agree in writing to pay the past due balance including customer charges in equal installments beginning with the first billing period after March 15th and ending before October 15th. Consumer must also agree in writing to pay all bills for current service by the due date.

56.     Plaintiff was not provided the opportunity to agree in writing to pay the balance due.

57.     Defendant Georgia Power disconnected service at Plaintiff's home against the laws of the State of Georgia and the PSC's rules and regulations.

58.     Defendant Georgia Power's wrongful disconnection of service at Plaintiff's home is still causing harm to the Plaintiff as of the month of June 2022 due to the high heat temperature in Georgia.

59.     The seasonal hold also applies to the summer. "A utility shall not discontinue electric service to a residential customer if, prior to 8:00 A.M on the date of the scheduled disconnection, a National Weather Service Heat Advisory or Excessive Heat Warning is in effect, or is forecasted to be in effect by the National Weather Service, for the county in which the meter scheduled for disconnection is located."

60.     Plaintiff is impacted by the high heat that has started in Georgia. Under the seasonal hold for the summer, Defendant would not be able to disconnect service at Plaintiff's home. Therefore, Georgia Power's wrongful act is still in progress.

61.     Plaintiff still does not have electricity in her home and Defendant Georgia Power refuses to provide Plaintiff with electricity using her current account number 93437-55009.

### Right To Appeal

62.     Before a service termination, Plaintiff has a right to appeal to both Georgia Power and to the Georgia Public Service Commission.

63.     Electricity service is maintained or reconnected during the appeals process.

64.     Plaintiff was not provided with the option to appeal the termination of service.

### Right To Deferred Payment Plan

65.     In the state of Georgia, prior to the service termination, Plaintiff should have been informed of the option to pay the old bills through a reasonable installment plan.

66.     Plaintiff was not provided with the option for a reasonable installment plan.

### Billing Disputes

67.     Georgia Power is prohibited from disconnecting service if there is a legitimate billing dispute.

68.     Plaintiff is willing to pay the undisputed portions of Plaintiff's bill.

69.     Plaintiff Raissa Kengne is disputing the amount on the bill that she received based on her kWh usage. The total kWh used on Plaintiff's electricity bill for the month of November 2022 was 390 kWh. The total kWh used on Plaintiff's electricity bill for the month of December 2022 was 723 kWh. There is a difference of 85.34%. The usage on the bill increased by 85.34% or 333 between November 2022 and December 13, 2022.

70.     A kilowatt hour (kWh) is a measure of how much energy is used per hour, whilst a kW is a measure of power. kW stands for kilowatt, a universal standard for measuring electricity. Therefore, one (1) kilowatt equals 1,000 watts. Georgia Power charges by how much electricity is used per kilowatt hour (kWh). The kWh is a unit of energy, the number of kilowatts that is use over time.

71.     The total kWh used on Plaintiff's electricity bill for the month of January dated January 13rd, 2022 was 736 kWh. The total kWh used on Plaintiff's electricity bill for the month of February dated February 11th, 2022 was 538 kWh. There is a difference of 26.90%. The usage on the bill decreased by 26.90% or 333 between January 13rd, 2022 and February 11th, 2022.

72.     There may be adjustments in the readings. The meter is read once a month by a Meter Reading employee. Due to weekends, holidays, or the length of the month, the total days between each meter reading may vary; thus, it is possible for the monthly usage to increase or decrease from the previous billing period even though the average daily use may remain the same. The electricity bill is calculated based on what is used in a monthly billing cycle. As the meter is read from month to month, the difference in these readings accounts for consumption,

and Plaintiff is billed accordingly. On occasion, Georgia Power may estimate the electric usage for a month's billing cycle due to specific circumstance. Georgia Power must provide the customer with information about estimated readings and any adjustments that are made to Plaintiff's account due to estimated readings. Plaintiff did not receive information related to a possible meter reading adjustment to explain the difference in the usage and the calculation of her electricity bill.

73.     According to Georgia Power's internal rules and regulation on Metering and Billing, if a "broken meter seals will constitute ground for question as to accuracy of meter registration. Should the meter fail to register properly, the bill will be estimated, based either upon a meter reading taken during the next billing period after the meter has been repaired, or replaced, or upon the amount charged during a previous corresponding period at the discretion of the Company. Correction of mistakes in meter readings and billings will be made when discovered by adding or deducting the proper amount to or from the bill."

74.     Plaintiff notes that the 1280 West Management team and the 1280 West Board members have access to alter the meter to Plaintiff's unit. Plaintiff is suing several 1280 West Management team members and the 1280 West Board members in the Fulton County Superior Court, which is documented in case number 2022CV365268.

75.     Plaintiff is also suing several 1280 West Management team members and the 1280 West Board members in the Fulton County Superior Court, which is documented in case number 2022CV365268 for withholding Plaintiff's mail including mail from Georgia Power. Plaintiff was obligated to take a USPS mail box to securely receive her mail.

76.     Plaintiff is disputing her electricity bills due to the discrepancies in her electricity usage as reported by Georgia Power on her bill. Plaintiff submitted copies of her Georgia Power electricity as part of the Notice of Filing – Exhibit 1.

### Plaintiff's Willingness To Pay Past Due Amount

77.     Plaintiff is willing to pay the past due amount on her account if she is allowed to make the payment on the account number 93437-55009 that she has held for more than ten (10) years.

### Closed Account

78.     Defendant Georgia Power closed Plaintiff's account number 93437-55009.

79.     Defendant Georgia Power refuses to let Plaintiff pay the previous balance on her account using the account number 93437-55009.

80.     Defendant Georgia Power informed Plaintiff on the phone on June 6th, 2022 that all Georgia Power locations had been closed and she will only be able to make payments to a new account at a Walmart, Walgreens, Publix, or Kroger location using a new account number.

81.     Plaintiff is reluctant to make payments to an unknown account number obtained via telephone in view of the increase in phone scams.

82.     Plaintiff does not want to have a new account number and has requested that she be allowed to make a payment on the past due balance to the account number she has utilized in the past, which is account number 93437-55009. Defendant Georgia Power declined Plaintiff's request.

83.     Plaintiff requests that the court orders Georgia Power to re-establish Plaintiff's account number 93437-55009 and to allow Plaintiff to make payments to this account.

### Definition and Description of Terms

84.     Billing (Past Due Date): A bill is past due if it remains unpaid 21 days from the statement Date.

85.     Late Fee: Georgia Power's late fee is 1.5% of balance on bills greater than $100.

86.     Deposit: The maximum deposit is two-and-one-half-twelfths (2.5 times) the average monthly bill.

87.     Interest Rate: Interest shall accrue on all deposits held on the customer's Georgia Power Company's account.

88.     Budget Billing: A payment option that is available to customers who want the convenience of paying the same bill amount each month. The monthly amount is based upon the customer's rolling twelve-month average bill. At the end of the specified period, the customer's account is "trued up."

89.     Flat Bill: A payment option that allows a consumer to pay the same amount each month for electricity usage for a specified period of time. The bill is based upon the customer's twelve-month average bill plus a premium which may be as much as 10%. There is no true-up at the end of the contract period. If you pay more for electric service than what you used the amount that you have overpaid will not be credited to your account.

## IV.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT ONE:

**Notice of Termination Not Received - Illegal and Wrongful Disconnection**
**Rule 515-3-2-.01 Reasons for Disconnection**
**Rule 515-3-2-.02 Notice of Disconnection**

(Against Georgia Power)

90.     The Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint, Injunction for Relief, and Declaratory Judgment and the facts as if set forth here in full for all purposes.

91.     No residential electric utility service may be disconnected except for the following reasons:

(1)     upon consumer request;

(2)     when service to the customer constitutes an immediate hazard to persons or property;

(3)     by order of the Georgia Public Service Commission, any Court, or any other authorized public agency;

(4)     violation of applicable utility rules and regulations approved by and filed with the Georgia Public Service Commission;

(5)     a bill for past service is not paid within at least 45 days after the date of the bill, provided that said bill is not for service to a previous occupant of the premises served, is not for the purchase of merchandise or appliances and is not for service rendered at a different metering point if such bill is unpaid for less than 45 days.

92.     Plaintiff paid a deposit amount to Georgia Power when she first opened her account. The deposit amount was not applied to Plaintiff's electricity bill prior to the service disconnection or was not taken account into determining the number of days past due before disconnecting the electricity. Defendant Georgia Power has terminated service at Plaintiff's home before the required 45 days after the date of the bill, thereby violating laws and regulations related to service disconnection in the state of Georgia.

93.     Utility companies must provide a written notice of proposed disconnect provided at least five (5) days prior to date of disconnection.

94.     Plaintiff was not given notice prior to termination of service: (a) that the service will be terminated by a particular date, (b) the reason for the proposed shut-off, (c) the various rights that the consumer has to prevent termination, (d) the right and procedures for appeal. Sometimes written notice must be given more than once and may not resemble a regular bill.

95.     Plaintiff Raissa Djuissi Kengne is in need of intervention by the Court to settle and afford relief from lack of electricity, uncertainty, and insecurity with respect to her rights, status, and legal relations with Georgia Power relative to the service of utility by a company regulated by the Public Service Commission and subject to the laws of the state of Georgia, and the ends of justice require that the declaration be made.

## COUNT TWO:

**Illegal And Wrongful Disconnection of Service**
**Rule 515-3-2-.02 Limitations on Disconnection**
**Rule 515-3-2-.04 Seasonal Restrictions**
**Rule 515-3-2-.01 Reasons for Disconnection**
(Against Georgia Power)

96.     The Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint and the facts as if set forth here in full for all purposes.

97.     Other rules notwithstanding, a utility shall not discontinue service to a residential customer for an unpaid bill between November 15 and March 15 if:

(1)     The customer agrees in writing to pay the past-due balance including customer charges in equal installments for a maximum duration beginning with the first

billing period after March 15 and concluding prior to the following October 15, unless the customer fails to comply with such agreement;

    (2)    In addition, the customer agrees in writing to pay all bills by their due date for current service received after said agreement unless the customer fails to comply with such agreement;

    (3)    The forecasted local low temperature for a 24-hour period beginning at 8:00 A.M. on the date of the proposed disconnection is below 32° F.

98.    Other rules notwithstanding, an electric utility shall not discontinue service to a residential customer for an unpaid bill if:

    (1)    Prior to 8:00 A.M. on the date of the scheduled disconnection, a National Weather Service Heat Advisory or Excessive Heat Warning is in effect, or is forecasted to be in effect by the National Weather Service, for the county in which the meter scheduled for disconnection is located.

99.    Plaintiff's electricity was disconnected on March 3rd, 2022.

100.    Defendant Georgia Power's wrongful disconnection of service at Plaintiff's home is still causing harm to the Plaintiff as of the month of June 2022 due to the high heat temperature in Georgia.

101.    The usage on Plaintiff's electricity bill increased by 85.34% or 333 between November 2022 and December 13, 2022.

102.    The usage on the bill decreased by 26.90% or 333 between January 13rd, 2022 and February 11th, 2022.

103.     Plaintiff is disputing her electricity bills due to the discrepancies in her electricity usage as reported by Georgia Power on her bill. Plaintiff submitted copies of her Georgia Power electricity as part of the Notice of Filing – Exhibit 1.

104.     Plaintiff's electricity bill was paid in full for the month of December 2022.

105.     Defendant Georgia Power stated that Plaintiff's bill was not paid for the months of January 2022 and February 2022.

106.     Plaintiff paid a deposit amount to Georgia Power when she first opened her account. The deposit amount was not applied to Plaintiff's electricity bill prior to the service disconnection or was not taken account into determining the number of days past due before disconnecting the electricity. Defendant Georgia Power has terminated service at Plaintiff's home before the required 45 days after the date of the bill, thereby violating laws and regulations related to service disconnection in the state of Georgia.

107.     Plaintiff Raissa Djuissi Kengne is in need of intervention by the Court to settle and afford relief from lack of electricity, uncertainty, and insecurity with respect to her rights, status, and legal relations with Georgia Power relative to the service of utility by a company regulated by the Public Service Commission and subject to the laws of the state of Georgia, and the ends of justice require that the declaration be made.

### COUNT THREE:

### Wrongful Denial of Right To Appeal
(Against Georgia Power)

108.     The Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint and the facts as if set forth here in full for all purposes.

109.     Electricity service is maintained or reconnected during the appeals process.

110.    Plaintiff was not provided with the option to appeal the termination of service.

111.    Plaintiff Raissa Djuissi Kengne is in need of intervention by the Court to settle and afford relief from lack of electricity, uncertainty, and insecurity with respect to her rights, status, and legal relations with Georgia Power relative to the service of utility by a company regulated by the Public Service Commission and subject to the laws of the state of Georgia, and the ends of justice require that the declaration be made.

## COUNT FOUR:

### Wrongful Denial of the Right To Deferred Payment Plan
(Against Georgia Power)

112.    The Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint and the facts as if set forth here in full for all purposes.

113.    Plaintiff was not provided with the option for a reasonable installment plan.

114.    Plaintiff Raissa Djuissi Kengne is in need of intervention by the Court to settle and afford relief from lack of electricity, uncertainty, and insecurity with respect to her rights, status, and legal relations with Georgia Power relative to the service of utility by a company regulated by the Public Service Commission and subject to the laws of the state of Georgia, and the ends of justice require that the declaration be made.

## COUNT FIVE:

### Billing Disputes
### Rule 515-3-2-.06 Right of the Customer
(Against Georgia Power)

115. The Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint and the facts as if set forth here in full for all purposes.

116. In the case of a disputed bill, the residential customer shall have the right, after all remedial measures with the utility have failed, to request in writing, or orally to be followed by a request in writing, the Georgia Public Service Commission to investigate the dispute before service may be terminated, provided that such a request must be made within 10 days after the date of the disputed bill. Any late charges assessed in the case of a disputed bill shall be refunded if it is determined that the customer does not owe the bill.

117. Plaintiff was unable to contact Georgia Power sooner due to horrific events detailed in a separate lawsuit filed in Fulton County Superior Court and referenced by case number 2022CV365268.

118. Plaintiff is disputing her electricity bills due to the discrepancies in her electricity usage as reported by Georgia Power on her bill. Plaintiff submitted copies of her Georgia Power electricity as part of the Notice of Filing – Exhibit 1.

119. The usage on Plaintiff's electricity bill increased by 85.34% or 333 between November 2022 and December 13, 2022.

120. The usage on the bill decreased by 26.90% or 333 between January 13rd, 2022 and February 11th, 2022.

121. Defendant Georgia Power's rules and regulations on Metering and Billing state as follows and included as part of the Notice of Filing – Exhibit 2:

(1) A separate meter shall be used in each separate premises for measuring electric service to each customer. Meter readings will not be consolidated for the same customer at different premises, or for several customers on the same or different premises. Each

metered service shall be billed at a service schedule prescribed for the class of service, and service supplied through more than one meter at the same or different locations shall not be combined and billed under one service schedule.

(2)    The location of the metering equipment shall be mutually agreed upon by the customer and a representative of the Company, and this location together with space to be provided must conform to the Company's BlueBook for Electrical Service.

(3)    Broken meter seals will constitute ground for question as to accuracy of meter registration. Should the meter fail to register properly, the bill will be estimated, based either upon a meter reading taken during the next billing period after the meter has been repaired, or replaced, or upon the amount charged during a previous corresponding period at the discretion of the Company. Correction of mistakes in meter readings and billings will be made when discovered by adding or deducting the proper amount to or from the bill.

(4)    Meters will be read at regular intervals monthly, in groups, known as routes, the reading date of any particular meter depending upon the route in which it is located. Bills will be rendered as soon as practicable after meters are read each month and shall be due and payable to the Company when rendered.

(5)    Where a meter cannot be read on the scheduled date the meter reading and corresponding use for the month will be estimated based on use by the customer in previous months. Since meter readings are continuous from month to month, any error in such estimate will automatically be corrected with the next actual meter reading.

(6)    Selective Meter Testing

a) Meters are to be sample tested utilizing recognized electric utility industry best practices and in accordance with the approved plan described in this section. The sample size and test criteria for acceptance or rejection of any lot of watt-hour meters shall be in accordance with American National Standards Institute/American Society for Quality (ANSI/ASQ) Sampling Plans.

1. ANSI/ASQ, Sampling Procedures and Tables for Inspection by Variables for Percent Nonconforming (ANSI/ASQ Z1.9).

2. ANSI/ASQ, Sampling Procedure and Tables for Inspection by Attributes (ANSI/ASQ Z1.4).

b) Each calendar year a random sample of our Advanced Metering Infrastructure (AMI) meters in service from the entire system shall be drawn, tested and the accuracy calculated in accordance with the above procedure. An exception would only exist in testing the meters of customers on the AMI Meter Opt Out tariff. These meters will be tested on an interval not to exceed every three (3) years.

c) The percent accuracy is to be measured to the nearest .1 of 1% and the upper and lower specification limits shall be 102% and 98% respectively. Failure of any lot to meet the above standards shall result in concentrated testing to determine if increased maintenance or accelerated retirement is in order to maintain the required accuracy for acceptance under the plan.

(7)     Adjustment of Bills:

a)     An adjustment of past bills for service will be made on customer complaint, if the meter is found on test to be in excess of 102% average accuracy.

b)     The amount of adjustment shall be calculated on the basis that the metering equipment should be 100 percent accurate. For kilowatt and kilowatt-hour meters, the average shall be the arithmetic average of percent indication at light load and at heavy load, giving the heavy load indication a weight of four.

c)     The records of the customer's energy use and those of previous tests shall be reviewed and a mutually acceptable agreement reached between the customer and the Company as to when the error began. Meters below 98% average accuracy will be handled as above except those adjustments will be limited to the preceding six months.

(8)     Receivables of $75 or more which remain unpaid 21 calendar days after the bill date are subject to a late payment charge, applied at the rate of 1.5% but not less than $2.00. 13.

(9)     Meter Re-read Fee:

a)     A customer may assert an incorrect meter reading and request that the Company re-read his meter.

122.     Plaintiff notes that the 1280 West Management team and the 1280 West Board members have access to alter the meter to Plaintiff's unit. Plaintiff is suing several 1280 West

Management team members and the 1280 West Board members in the Fulton County Superior Court, which is documented in case number 2022CV365268.

123. Plaintiff is also suing several 1280 West Management team members and the 1280 West Board members in the Fulton County Superior Court, which is documented in case number 2022CV365268 for withholding Plaintiff's mail including mail from Georgia Power. Plaintiff was obligated to take a USPS mail box to securely receive her mail.

124. Plaintiff is disputing her electricity bills due to the discrepancies in her electricity usage as reported by Georgia Power on her bill. Plaintiff submitted copies of her Georgia Power electricity as part of the Notice of Filing – Exhibit 1. When a dispute is started, electricity must not be disconnected or should be restored.

125. Plaintiff Raissa Djuissi Kengne is in need of intervention by the Court to settle and afford relief from lack of electricity, uncertainty, and insecurity with respect to her rights, status, and legal relations with Georgia Power relative to the service of utility by a company regulated by the Public Service Commission and subject to the laws of the state of Georgia, and the ends of justice require that the declaration be made.

## V.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court that Defendant be cited to appear and answer herein; that, on final hearing, the Court enters a judgment against Defendants in Plaintiff's favor and grants relief to Plaintiff against the Defendants as follows:

(1)  Order the Defendant to restore electricity at Plaintiff's home immediately.

(2)      Order the Defendant to let Plaintiff pay for past due amount of the bill under the account number 93437-55009 that Plaintiff has had for more than ten (10) years.

(3)      Declare that the Defendants violated the laws and regulations as set forth above;

(4)      Order the Defendants to provide usage information, reading meter test information, and any other relevant documents and information required by Plaintiff to calculate the disputed usage and amount on her electricity bills.

(5)      Grant any such additional relief to Plaintiff in law or equity as the Court deems just and proper under the circumstances.

## VI.

## DISCOVERY CONTROL PLAN

Plaintiff intends for discovery, if needed, to be conducted under Article 5 Depositions and Discovery of the Georgia Civil Practice code.

## VII.

## PLACE OF TRIAL

Pursuant to O.C.G.A. § 9-11-40, Plaintiff hereby requests that trial of this case takes place in Atlanta, Georgia.

## VIII.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: __June__ __09__ , 2022

Respectfully submitted,

Raissa Djuissi Kengne

Pro Se

Physical Address:

1280 W. Peachtree ST NW. Unit 2109

Atlanta, GA 30309

Telephone: (404) 932-1651

Email: cianeseya2022@gmail.com

Mailing Address:

570 Piedmont Ave. NE #55166

Atlanta, GA 30308